524 So.2d 828 (1988)
Ray L. MOORE, Jr., et al., Plaintiffs-Appellees,
v.
THORNWELL WAREHOUSE ASSOCIATION, Defendant-Appellant.
No. 86-1292.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1988.
Stephen P. Coco, Jennings, for plaintiffs-appellees.
Millican, Miller & Buisson (F. Jefferson Millican), Jennings, for defendant-appellant.
Before DOMENGEAUX, FORET and DOUCET, JJ.
DOMENGEAUX, Judge.
Ray L. Moore, Jr. and twenty other Welsh, Louisiana area farmers commenced this proceeding against the Thornwell Warehouse Association (Thornwell). The plaintiffs alleged that Thornwell, an incorporated cooperative marketing association, had improperly graded the soybeans they delivered to the defendant during the 1984 crop year. The plaintiffs sought money judgments contending that Thornwell's improper grading reduced their per bushel price.
The Trial Court rendered judgment in favor of the plaintiffs concluding that Thornwell had improperly graded the plaintiffs' soybeans. A precise measure of damages was impossible to ascertain because the plaintiffs' beans were commingled and resold shortly after delivery. The Court, however, awarded damages based upon a formula involving randomly selected probe samples which had been graded by both Thornwell and the State.
Having thoroughly reviewed the record and researched the relevant law, we conclude that the judgment of the District Court should be affirmed.
The "Reasons For Judgment" of the trial judge are quite thorough and we, therefore, *829 adopt them, with minor modifications, as our opinion.

REASONS FOR JUDGMENT
In this suit Ray L. Moore, Jr. and others (plaintiffs) seek a money judgment against Thornwell Warehouse Association (defendant or Thornwell) for the alleged improper grading of their 1984 beans processed through the Thornwell facility at Welsh, Louisiana.
In 1984, and before the 1984 soybean crop-year, Thornwell purchased the American Rice Growers facility located at Welsh, Louisiana. Plaintiffs are former members or patrons of American Rice Growers of Welsh. Plaintiff, Ray L. Moore, Jr., was the President of American Rice Growers of Welsh. In addition to the Welsh facility, Thornwell also has facilities at Thornwell and Iowa, Louisiana.
Plaintiffs brought their beans to the Welsh facility where they were deposited and sold in the following manner. The beans arrive by truck. The load is weighed and a sample is taken by probe. The farmer is given a scale ticket which reflects the weight and moisture of the beans. The sample, however, is graded at the Thornwell facility some ten or twelve miles away. The grade of the sample is not available to the farmer until several days later. The beans are then dumped and commingled with other beans at the Welsh facility.
After the beans are dried and processed they are transported to the port at Lake Charles for sale on the open market. The beans are regraded upon arrival at the port. The grade given by Thornwell is known as the incoming grade and the grade given by the port as known as the outgoing grade. Plaintiffs were paid based on the incoming Thornwell grade and Thornwell was paid based on the outgoing port grade. Therefore, the grade given to the soybeans is crucial in determining how much the farmer ultimately receives for his beans.
The issues to be resolved by the Court are: (1) whether Thornwell used the proper standards in grading plaintiffs' beans; and (2) the amount of damages due plaintiffs if the Court finds that Thornwell is liable to plaintiffs for improperly grading their beans.

THORNWELL'S GRADING PROCEDURES
Plaintiff Moore testified that he delivered his first beans to the Welsh facility on October 30, 1984 and received his grading certificates some eight (8) days later, whereupon he called Walter Dugas, Thornwell's manager, complaining about a high damage factor. Dugas contacted Aaron Hebert, the State Grader in the area, who came to Thornwell on or about November 12, 1984. Eleven (11) samples chosen at random by employees of Thornwell were submitted to Hebert for regrading. Ironically, nine (9) of these eleven (11) samples were beans which had been delivered by plaintiff Moore. These nine (9) samples belonging to Moore were regraded by the State and the differences in the gradea are shown as follows:

 THORNWELL STATE
TICKET DAMAGE GRADE DAMAGE GRADE
59296 47.3% 11.9%
59298 40.5% 8.8%
59299 43.1% 11.9%
59301 40.0% 9.2%
59305 36.5% 10.0%
59307 46.1% 13.2%
39317 46.0% 10.3%
39323 17.8% 4.9%
59330 16.3% 4.7%

While it is normal to have some slight differences in grades due to interpretative elements, it is obvious that the large discrepancy in grades in this case did not result from differing interpretations, but rather, from the use of different standards.
Although there are various deductions in determining the quality of the beans and what price the farmer receives for his beans, the only factor at issue in this case is the deduction for what is referred to as "field damage" and the controversy centers around the proper standard for molded or mildewed beans. The testimony shows that the Thornwell graders and the State Grader used different standards in computing this deduction. Thornwell considered the bean a damaged bean if the seed coat *830 had any damage from mold or mildew. The State grader considered the bean damaged only if the seed coat was 75% or 80% covered.
Prior to 1985, Louisiana Statutory Law did not provide any standards for sampling and grading grain. By Acts 1985, No. 793 R.S. 3:3414.2 (redesignated as R.S. 3:3414.3) was adopted. The statute provides that the Louisiana Agricultural Commodities Commission shall, by rule, adopt standards for sampling and grading grain. The standards are to be consistent with the standards adopted by the United States Department of Agriculture....
Although R.S. 3:3414.3 was not in effect in 1984 and therefore does not govern this case, the evidence shows that prior to 1985 the State used the standards developed by the United States Department of Agriculture. These standards were set forth in the official grain inspection manual of the Federal Grain Inspection Service.
Corinna Dugas, the wife of Thornwell manager Walter Dugas and a Thornwell grader who had been grading beans for twenty-three years, testified that throughout her many years as a grader she had attended several seminars sponsored by the State during which grading standards were reviewed. She testified, however, that it was not until after Hebert, the State grain inspector, visited Thornwell in November of 1984 and reviewed Thornwell's grading procedures, that she learned there was a difference between Thornwell's grading criteria and the State's.
It is the position of Thornwell that during the 1984 crop year there was a change in the interpretation of soybean field damage and that its graders did not learn of this change until after Hebert had spoken with them in November. Plaintiffs, on the other hand, contended that there was no change in the interpretation of the standards during the 1984 crop year and that the same standards had been in effect for many years. The plaintiffs argue that Thornwell simply used an incorrect standard.
The plaintiffs presented the testimony of Hebert and his immediate supervisor, Wendell Smith, Chief Grain Inspector for the Louisiana Department of Agriculture. Hebert had been a licensed Federal Grain Inspector since 1978. He testified that the State used the standards adopted by the United States Department of Agriculture in grading the grain and that these standards were set forth in the official grain inspection manual which was revised from time to time by the Federal Grain Inspection Service. Hebert testified that there had been no change in the interpretation during 1984 and that the same interpretation criteria had been used since 1980. Smith stated that he had been a licensed Federal Grain Inspector since 1974. He testified that the State used the federal standards and that no changes in the interpretation standards had been made during 1984 or any previous year.
Defendant presented the testimony of Diana Breaux and Elliott Higginbotham, in addition to that of Corinna Dugas which was previously discussed. Breaux testified that she had been employed for the last 6 years by Consolidated Grain and Barge as a grain inspector and that she was a licensed Federal Grain Inspector. This witness was very nervous and gave confusing testimony. She stated that since her licensing as a grader, she had used the 80% standard in determining bean damage. She testified that on October 24 or October 25 Hebert told her that any mold or mildew on a bean would result in it being considered damaged. She stated that on October 29 Hebert returned and told her that as the result of a meeting in Alexandria it had been determined that the "any" mold or mildew standard was too harsh and that she should return to the 80% standard. When questioned by the Court she was positive in her testimony that prior to October 24 she was using the 80% standard, a standard she had been using since she was licensed and that the change on October 24 was to the harsher standard (any mold). This standard, however, was only in effect for four or five days until October 29, when she was instructed to return to the 80% standard. If anything, this testimony substantiates the position of plaintiffs that the *831 correct interpretation of the standards was 80% and not any mold as used by Thornwell.
Higginbotham testified that he had been employed as vice-president and manager of the Consolidated Grain and Barge facility at Mermentau since 1978. He was also President of the Louisiana Grain and Feed Association. He stated that there were problems in grading the 1984 soybean crop due to heavy rains. Higginbotham further testified that Hebert's office and his graders work closely together. He testified that on October 29 his graders told him that Hebert said to use the 80% standard rather than the any mold or mildew standard. Higginbotham testified that the any mold or mildew standard was the standard he had been taught as a grader.
Other evidence which the Court deems relevant in resolving the issue of whether there was a change in the interpretation of the way soybean field damage was graded during the 1984 crop year is the testimony of plaintiff Ray L. Moore. Moore testified that he delivered some of his beans from rented property to another grain facility and received a much lower grade on these beans than he received at Thornwell. The Court also closely scrutinized the evidence demonstrating the considerable differences in the incoming Thornwell grade versus the outgoing port grades, differences which cannot satisfactorily be explained away except that Thornwell was using a different standard from the port. Blending would not account for large discrepancies in the grades.
After a careful review of the testimony and exhibits introduced at trial, the Court concludes that the evidence preponderates that there was no change in the interpretation of soybean field damage during the 1984 crop year. Thornwell was using an improper standard in grading plaintiffs' beans and is, therefore, liable to plaintiffs for damages.

DAMAGES
Defendant argues that even if liability is established the Court cannot allow plaintiffs to recover since damages must be proven with reasonable certainty as damages which are purely conjectural should not be allowed. Defendant contends the plaintiffs are attempting to recover speculative damages since the individual grades of each plaintiff are not available and the individual beans have been commingled.
The law, however, is well-settled, as pointed out by the plaintiffs' counsel in brief. When there is a legal right to recover damages but the amount cannot be exactly estimated, the courts have reasonable discretion to assess damages based upon all the facts and circumstances of the particular case. A plaintiff's demand should not be rejected merely because he cannot establish with precision the amount suffered. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (La. 1971). Moreover, under art. 1934 (3) of the Louisiana Civil Code, in effect prior to 1985, when damages are insusceptible of precise measurement much discretion is left to the Court for the reasonable assessment of those damages.
Plaintiffs submit that in this case we have the eleven samples setting forth the differences between the Thornwell grade and the State grade. Plaintiffs also note that we have the incoming Thornwell grade and the outgoing port grade which can be used by the Court in reasonably assessing damages, although the beans have been commingled.
In brief, counsel for plaintiffs suggest to the Court three formulas which the Court may use in determining damages. Plaintiffs introduced into evidence exhibits for each plaintiff which show a figure labeled "Total TW Damage Deduction" which refers only to the damage deduction and excludes all other deductions. By multiplying each formula by the damage deduction, the Court can arrive at the damages due each plaintiff.
Formula 1 suggests a 95.2% figure. This figure is arrived at by using the incoming and outgoing overall damage factor accorded the beans from the Welsh facility. Thornwell's grade of the Welsh beans was 11.99% resulting in a $.42 deduction. The *832 port grade was 2.25% resulting in a $.02 deduction. The difference between $.42 and $.02 is $.40, and $.40 divided by $.42 is 95.2%. This formula demonstrates that the damage deduction by Thornwell was 95.2% more than it should have been.
Formula 2 suggests a 86.1% figure. This figure comes from the nine (9) Ray Moore samples and the dollar figure used for each load. For example, ticket 59296 shows that Thornwell deducted $2.55 and the State deducted $.42, which would give an excess factor of $2.55 minus $.042, or $2.13. When $2.13 is divided by $2.55 the result is 83.5%. By averaging the percentages shown on the nine (9) samples, the overall average percentage is 86.1%. Computed this way the damage deduction by Thornwell was 86.1% more than it should have been.
Formula 3 suggests an 81% figure. This figure is derived by using Walter Dugas' testimony in court that the Thornwell grade of the Welsh facility was 11.94% whereas the port grade of the Welsh facility was 5.19%. The Thornwell deduction was $.42 and the port deduction was $.08 or a difference of $.42 minus $.08, or $.34 when $.34 is divided by $.42 the results is 81%.
The Court finds that Formula 2 should be used in computing damages. Formulas 1 and 3 take into consideration the blend factor which would be inappropriate as the farmer is only entitled to be paid for his individual beans. He is not entitled to be paid after the beans are commingled with other beans which might lower his individual damage figure. There is nothing illegal or immoral with the grain dealer making a profit on the blend provided the proper grade standards are applied by the grain dealer and the port to the beans. Formula 2 does not take into consideration any blend, but arrives at a figure which shows the average difference between the improper Thornwell grade and the proper state grade on the samples which were regraded. Using Formula 2 the Court arrives at the amount of damages due each plaintiff as follows:

RAY L. MOORE, JR. $3,951.78
ROBERT A. HEBERT 3,235.77
ROBERT C. HEBERT 242.49
RICHARD G. BENOIT 3,847.98
J.R. MECHE FARM 8,180.02
PARIS BROUSSARD 381.57
TROY ROMERO 395.87
JOSEPH HOKE 2,495.66
JOHNNIE ROSE BLANCHARD 404.56
ROBERT DOUGHERTY 76.41
RICHARD MOORE 4,735.46
LOWELL MOORE 111.10
BRANDON MOORE 360.62
MRS. M.J. PITRE 145.67
ALBERT FINLEY 678.27
WAYNE PITRE 3,515.14
TRIMBLE CORPORATION 400.06
DAVID ALLEN HEBERT 1,270.90
PHILLIP W. HEBERT 1,270.90
MABEL DEROUEN 150.11
MARJORIE MARTIN and YOUNG
KANG 246.93

Therefore, for the above and foregoing reasons, the judgment of the trial court in favor of the plaintiffs and against the defendant is affirmed.
All costs of this appeal are assessed against the defendant-appellant.
AFFIRMED.