United States Court of Appeals,

Fifth Circuit.

No. 93-5552.

MOBIL EXPLORATION AND PRODUCING U.S., INC., Plaintiff-Appellant,

v.

CAJUN CONSTRUCTION SERVICES, INC., Defendant-Appellee.

Feb. 17, 1995.

Appeal from the United States District Court for the Western District of Louisiana.

Before REYNALDO G. GARZA, WIENER, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Mobil Exploration and Producing U.S., Inc. ("Mobil"), sued Cajun Construction Services, Inc. ("Cajun"), to recover money paid to Cajun for deliveries of limestone, alleging that Cajun had short-loaded those deliveries. After a bench trial, the district court found in favor of Cajun and dismissed Mobil's suit with prejudice. Mobil appeals the judgment, and we reverse and remand.

**I**

For seven years, Cajun supplied Mobil with limestone for its operations in southern Louisiana. Mobil ordered the limestone in fourteen-cubic-yard or twenty-four-cubic-yard loads.[1] Cajun billed Mobil by the yard, and Mobil paid Cajun's bills.

Mobil later received information suggesting that Cajun had loaded the deliveries of limestone short, and Mobil then conducted an audit of Cajun's records to determine whether Cajun had delivered the proper quantities of limestone. Mobil discovered that Cajun had discarded all the primary documents that identified specifically each load delivered to Mobil; only the records of Cajun's purchases from its own suppliers were available. Mobil analyzed those supplier records, determined the weights and corresponding cubic yardages of Cajun's purchases, and also attempted

---

[1]The evidence revealed that Cajun typically ordered limestone from its suppliers by the ton. Both parties introduced evidence of the appropriate conversion by which the tonnages could be converted to cubic yards. These conversion factors ranged from approximately 1.2 to 1.5 tons per cubic yard.

to correlate those purchases from suppliers with deliveries to Mobil. Based on this analysis, Mobil concluded that Cajun had short-loaded its deliveries to Mobil, and, when Cajun did not refund the value of the claimed shortfall, Mobil sued Cajun for the alleged overpayments.

At trial, Mobil introduced evidence that it ordered limestone from Cajun in either fourteen-yard or twenty-four-yard quantities.[2] Mobil then introduced evidence of over 3400 loads of limestone that Cajun had obtained at third-party suppliers both for its own uses and for deliveries to customers. That evidence included scale tickets indicating the actual weight of the limestone that Cajun had loaded into its trucks. The evidence also suggested that the average load for Cajun's large trucks used for deliveries to Mobil and other Cajun customers was less than twenty-four cubic yards, and that the average load for Cajun's small trucks was less than fourteen cubic yards. Mobil also introduced evidence that Cajun loaded its trucks at its own yards in the same manner that it loaded its trucks at the third-party suppliers. In response, Cajun introduced evidence that it routinely loaded its trucks by using a front-end loader with a "3-yard bucket" and counted the number of buckets to ensure proper loading.[3]

Rather than relying solely on its proffered evidence of Cajun's routine practice of loading its trucks short, Mobil further attempted to prove by correlation that Cajun had directly delivered to Mobil from the third-party suppliers.[4] In response, Cajun offered testimony to show that it routinely delivered from its own yards to its customers and not from third-party suppliers. Further, Tommy Angelle, Cajun's co-owner, attempted to show by correlation that the third-party loads which Mobil

---

[2]Cajun used two sizes of trucks for its limestone deliveries. It used its smaller trucks for the "fourteen-yard" deliveries and its larger trucks for the "twenty-four-yard" deliveries. The parties disagreed as to what were the actual and utilized capacities of those trucks.

[3]Mobil also introduced evidence suggesting that Cajun's trucks either physically could not carry a fourteen- or twenty-four-yard load, or if physically possible, did not because the truck would have grossly violated state motor vehicle weight restrictions. Further, Mobil presented evidence that the "3-yard bucket" with which Cajun loaded its own trucks had a maximum capacity of only 2.3 yards.

[4]As the basis for its correlation, Mobil relied on the records of Cajun's purchases from the third-party suppliers.

believed it had received had actually gone to other Cajun customers.[5]  Cajun also offered testimony from its own truck drivers and a Mobil contractor suggesting that Cajun typically loaded the deliveries for Mobil properly from its own yards.  Because Cajun had discarded its records of the individual loads, neither Mobil nor Cajun could show directly which loads went to Mobil sites and how much those loads had contained.

After the bench trial, the district court concluded that Mobil had not proven that Cajun had short-loaded deliveries of limestone to Mobil sites.  Consequently, the district court dismissed Mobil's suit with prejudice.  Mobil appeals, arguing that the district court erred by 1) refusing to consider its proffered evidence of the manner in which Cajun routinely loaded its trucks, and 2) holding Mobil to an improperly high standard in its proof of its entitlement to and amount of damages.

II

Mobil argues that the district court erred in its analysis of the law applicable to its suit.  First, Mobil contends that the district court failed to consider evidence, as required by Federal Rule of Evidence 406, of Cajun's routine practice of loading its trucks in a particular manner.  Next, Mobil asserts that the district court imposed an improperly high standard for Mobil's proof of damages.

Mobil argues that the district court's finding that Cajun had not short-loaded its deliveries of limestone to Mobil is legally erroneous.  Although we ordinarily review the trial court's findings of fact for clear error, *Anderson v. City of Bessemer City,* 470 U.S. 564, 573-75, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985), a judgment based on a factual finding derived from an incorrect understanding of substantive law must be reversed.  *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha,* 754 F.2d 591, 597 (1985).[6]

---

[5]Angelle also used the records of Cajun's purchases from its third-party suppliers.  Because Cajun had discarded its records of its deliveries to Mobil, neither party could show direct documentary evidence of the deliveries to Mobil.

[6]*Accord Tyler v. Insurance Co. of N. Am.,* 539 F.2d 1072, 1074 (5th Cir.1976) ("Any fact findings based on an erroneous legal standard cannot be credited.");  *Fulton Nat'l Bank v. Tate,* 363 F.2d 562, 567 (5th Cir.1966) ("If erroneous, this [legal] conclusion would taint the crucial findings of fact, for as we have often held, "findings induced by or resulting from, a misapprehension of controlling substantive principles lose the insulation of F.R.Civ.P. 52(a) and a judgment based thereon cannot stand.' ")  (quoting *Davis v. Parkhill-Goodloe Co.,* 302 F.2d 489, 491 (5th Cir.1962)).

Mobil first asserts that the trial court erred in refusing to consider its proof of Cajun's routine practice of loading its trucks in a particular manner. Habit evidence is relevant to prove that a business acted in a certain way. Fed.R.Evid. 406.

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

*Id.; see also McCormick on Evidence* § 195, at 351 (John W. Strong ed., 4th ed. 1992) (explaining that habit or routine practice "denotes one's regular response to a repeated situation"). "Rule 406 allows the introduction of evidence of the habit of a person for the purpose of proving that the person acted in conformity with his habit on a particular occasion." *Reyes v. Missouri Pac. R. Co.,* 589 F.2d 791, 794 (5th Cir.1979) (footnote omitted). Moreover, evidence of a routine practice is highly probative,[7] and persuasive. *Loughan,* 749 F.2d at 1524. It is particularly persuasive in the business context because "the need for regularity in business and the organizational sanctions which may exist when employees deviate from the established procedures give extra guarantees that the questioned activity followed the usual custom." *McCormick on Evidence* § 195, at 351.

To obtain a Rule 406 inference of the routine practice of a business, a plaintiff must show a sufficient number of specific instances of conduct to support that inference. *Reyes,* 589 F.2d at 795 ("Although a precise formula cannot be proposed for determining when the behavior may become so consistent as to rise to the level of habit, "adequacy of sampling and uniformity of response' are controlling considerations." (quoting Fed.R.Evid. 406 adv. comm. notes)).[8] Evidence of the

---

[7]*See Jones v. Southern Pac. R.,* 962 F.2d 447, 449 (5th Cir.1992) ("Habit evidence is superior to character evidence because the uniformity of one's response to habit is far greater than the consistency with which one's conduct conforms to character."); *Loughan v. Firestone Tire & Rubber Co.,* 749 F.2d 1519, 1524 (11th Cir.1985) ("Habit evidence is considered to be highly probative...."); *Reyes,* 589 F.2d at 794 (same).

[8]*See also United States v. Newman,* 982 F.2d 665, 668 (1st Cir.1992) (" "numerous enough to [support] an inference of systematic conduct' " (quoting *Wilson v. Volkswagen of Am., Inc.,* 561 F.2d 494, 511 (4th Cir.1977))), *cert. denied,* --- U.S. ----, 114 S.Ct. 59, 126 L.Ed.2d 28 (1993); *Simplex, Inc. v. Diversified Energy Sys., Inc.,* 847 F.2d 1290, 1293 (7th Cir.1988) (requiring demonstration of "frequency of uniform response" for Rule 406 inquiry).

defendant's actions on only a few occasions or only in relation to the plaintiff are not enough;[9] the plaintiff must show regularity over substantially all occasions or with substantially all other parties with whom the defendant has had similar business transactions.[10]

In this case, Mobil provided invoices for over 3400 of Cajun's loads of limestone obtained from third-party suppliers. Mobil introduced evidence to show that Cajun invariably loaded its trucks in the same manner and to the same level when Cajun obtained limestone from a third-party supplier. Mobil provided weight scale tickets showing that Cajun typically loaded either approximately fourteen-ton or twenty-five-ton loads at third-party suppliers.[11] Cajun's own witnesses testified that they loaded their trucks to the same level at Cajun's own yards as they did at the third-party yards.[12]

---

[9]*See United States v. West,* 22 F.3d 586, 592 (5th Cir.1994) (rejecting Rule 406 argument because offered evidence not numerous enough in relation to thousands of other dealings of defendant), *cert. denied,* --- U.S. ----, 115 S.Ct. 584, 130 L.Ed.2d 498 (1994); *G.M. Brod & Co. v. U.S. Home Corp.,* 759 F.2d 1526, 1533 (11th Cir.1985) (explaining that experience of one single contractor not sufficient evidence of routine practice habit in light of different experiences of thousands of other contractors who had dealt with same party).

[10]*See West,* 22 F.3d at 592 (requiring comparison of the number of allegedly deficient transactions with the total number of nondeficient transactions); *Rosenburg v. Lincoln Am. Life Ins. Co.,* 883 F.2d 1328, 1336 (7th Cir.1989) (holding that party's identical behavior with 29 applicants was "sufficient evidence of such a routine practice"); *Simplex,* 847 F.2d at 1294 (requiring plaintiff to acknowledge and compare all of the defendant's contracts in order to establish habit).

[11]Using the same average conversion factors as did the district court, these typical loads would convert as follows:

14 tons/1.42 tons per cubic yard = 9.86 cubic yards

25 tons/1.42 tons per cubic yard = 17.61 cubic yards

[12]Mr. Angelle testified:

> Q: Let's talk in terms of a twenty-four (24) yard load. Tell me whether you know whether that load level looks different when it's loaded in your yard versus when it's loaded at a third-party yard.
>
> A: No, sir. Twenty-four (24) yards is twenty-four (24) yards.
>
> Q: Are you telling me that you think the load would look the same it if was twenty-four (24) yards loaded in your yard or twenty-four (24) yards loaded in a third-party yard?
>
> A: They would look the same, yeah.

Mobil offered this evidence to show that, if Cajun always loaded its trucks in the same manner, and the third-party loads always held less than fourteen yards or twenty-four yards, then the loads from Cajun's yards must also have held less than fourteen or twenty-four yards, depending on the size load ordered. Yet the district court refused to consider this evidence in determining whether Cajun had short-loaded its trucks when it made deliveries to Mobil. When Mobil presented its evidence and attempted to explain the purpose and function of habit evidence, the district court responded:

> The court can't render a judgment, Mr. Arceneaux [Mobil's attorney], against somebody for a sum certain of money based on something that is predicated upon a habit.

Other statements by the district court similarly indicate that the district court would not accept evidence of routine practice as support for Mobil's allegations.[13] The district court refused to consider the inference properly raised by Mobil that, if Cajun routinely loaded all of its deliveries short, Cajun must also have short-loaded its deliveries to Mobil. Instead, the district court allowed Mobil to use its evidence of routine practice only "to show what the average small truckload or the average large truckload used by Cajun was, how many yards it contained." What the district court did not allow Mobil to use its evidence to prove was that because those average small and large truckloads were less than fourteen or twenty-four cubic yards, respectively, then Cajun in compliance with its routine practice must have loaded less than fourteen or twenty-four cubic yards when it delivered to Mobil.[14] Moreover, instead of allowing Mobil to satisfy the Rule 406 requirement that Mobil demonstrate Cajun's routine practice with evidence of loads to all destinations, not merely

---

Mr. Miller, representing all of Cajun's truckdrivers, testified:

> Q: Is it your testimony that the loads in the trucks looked the same to you when you loaded them in Cajun's yards as well as when you loaded them in third-party yards?
>
> A: Yes, sir.

[13]For example, when Mobil explained that "[t]he purpose of all of this evidence is that regardless of whether Cajun was delivering to Mobil or someone else, Cajun's practice routinely was to pick up in these weight ranges ...," the district court replied, "I don't follow that reasoning.... [T]his doesn't say anything, does it, about that [referring to Cajun's routine practice of loading all deliveries short]."

[14]It is this inference which Rule 406 explicitly allows and which the district court explicitly refused to consider.

those to Mobil, the district court held that evidence of transactions not positively traceable as being deliveries to Mobil was irrelevant.[15]  Accordingly, because the district court failed to apply Rule 406 properly,[16] we must reverse.  On remand, the district court should consider Mobil's evidence under Rule 406 and determine, in light of *all* the evidence, including Mobil's Rule 406 evidence, whether Mobil has established Cajun's routine practice for loading its trucks, and, if so, what implications that determination creates for the ultimate fact issues.[17]

---

[15]For example:

> THE COURT:  What is the purpose of documents showing sales to, for instance, Acadiana Shell?  It has nothing to do with this case.
>
> MR. ARCENEAUX:  Well, Your Honor, they are documents—they are sales from Acadiana Shell to Cajun.  Now, a number of those have been related further to transactions to Mobil.  But as I was explaining this morning, they're also introduced to establish the truck sizes that Cajun was routinely running.
>
> THE COURT:  Sales from Acadiana Shell to Cajun that had nothing to do with this case, what's the purpose of putting them in here?  And why should the Court have to consider those things?

Later, when Mobil attempted to again explain the purpose of evidence of routine practice:

> MR. ARCENEAUX:  That's the point of the records.  We're working from what we know the trucks had in them.
>
> THE COURT:  Well, what do you know they had in them?  You don't know what the trucks that went to Mobil had in them.
>
> Well, let's stick to those that you know went to Mobil.  I think that what went to anybody else is irrelevant.  If you have a practice you can show they loaded Mobil's trucks, fine.  If you can't, I don't know what relevance it has to this case.  I simply don't see it.

[16]Indeed, although the district court did not consider Mobil's evidence of a routine practice of Cajun, the district court did consider Cajun's evidence of its own routine practice of loading its trucks at its own yards.  Because Mr. Angelle's testimony that Cajun routinely delivered from its own yards was based only upon inferences derived from third-party-supplier documentation and not his independent recollection of any individual deliveries to Mobil, concluding that Cajun must have delivered to Mobil from its own yards required a Rule 406 inference.

[17]Mobil also contends that the district court erred in concluding that Cajun had properly loaded the trucks.  In its judgment memorandum, the district court stated that Cajun's witnesses had testified "that the trucks were loaded with a 3 cubic yard front end loader and the number of bucketloads was counted to insure that Mobil obtained the yardage that it had ordered."  It is not clear, however, whether the district court addressed the evidence, both documentary and testimonial, showing that the front-end loader actually used by Cajun had a maximum capacity of

Mobil further contends that the district court erred in deciding that, because Mobil could not prove by direct evidence that loads to Mobil had been short-loaded, Mobil could not sufficiently prove any damages. The district court stated in its decision that "[t]he documentation simply is not there for Mobil to rebut the testimony of Mr. Angelle, Cajun's truckdrivers, and Mr. Lamy" who testified that, because Cajun used a front-end loader with a "3-yard bucket" and routinely delivered from its own yards to its customers, it must have used the "3-yard bucket" method and delivered to Mobil from its own yards. The district court held that even if Mobil demonstrated how Cajun routinely loaded limestone irrespective of who the final customer was, Mobil must "further show that they did the same thing when they delivered to Mobil." Under Louisiana law, the plaintiff must prove damages with reasonable certainty,[18] but this merely means that the plaintiff must prove damages by a preponderance of the evidence as in other civil contexts.[19] A plaintiff may prove a business' conduct

only 2.3 cubic yards. It is also unclear whether the district court addressed the documentary and testimonial evidence showing that at least some of Cajun's trucks were physically incapable of holding a proper load of limestone as ordered by Mobil. Given that we are remanding to the district court to consider all the evidence, including Mobil's evidence of routine practice, we do not address this contention.

[18]*Nat Harrison Assocs. v. Gulf States Utils. Co.,* 491 F.2d 578, 587 (5th Cir.1974) ("Actual damages must be proven; they cannot be merely speculative or conjectural. While the breaching party should not escape liability because of difficulty in finding a perfect measure of damages, the evidence must furnish data for a reasonably accurate estimate of the amount of damages." (citations omitted)); *see also Hall v. Arkansas-Louisiana Gas Co.,* 368 So.2d 984, 991 (La.1979) ("Actual damages arising from a breach of contract must be proven; they cannot be merely speculative or conjectural."), *modified on other grounds,* 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981).

[19]Under Louisiana law,

> It must appear reasonably certain that the amount of damages rests upon a certain basis. Such proof need only be a preponderance of the evidence; proof by direct or circumstantial evidence is sufficient to constitute a preponderance when, taking the evidence as a whole such proof shows that the facts or causation sought to be proved is more probable than not.

*Hall,* 368 So.2d at 991; *Graham v. Edwards,* 614 So.2d 811, 819 (La.Ct.App.1993) (" "[L]oss of profits or income must be proved with reasonable certainty, i.e., by the more probable than not standard....' ") (quoting *Clark v. Ark-La-Tex Auction, Inc.,* 593 So.2d 870, 878-79 (La.Ct.App.1992)), *writ denied,* 619 So.2d 547 (La.1993).

Accordingly, we reject Cajun's argument that Mobil must "prove its case by direct proof, and to legal certainty, both the fact and amount of its losses." The cases cited by Cajun do not support its argument, and the applicable law clearly allows for circumstantial

with habit evidence alone; direct evidence is not necessarily required. *Loughan v. Firestone Tire & Rubber Co.,* 749 F.2d 1519, 1523 (11th Cir.1985) ("Evidence of habit or routine is to be weighed and considered by the trier of fact in the same manner as any other type of direct or circumstantial evidence."). "[S]uch [habit] evidence, when substantial, allows the trier of facts to infer that the habit was conformed with on a particular occasion." *Id.* Accordingly, if the district court determines on remand that Mobil has proven that Cajun had a routine practice of short-loading its trucks at both third-party suppliers and its own yards by a preponderance of the evidence, the district court can infer, without any additional evidence, that Cajun loaded its deliveries to Mobil according to that routine practice. If the district court determines further that the routine practice resulted in short loads, the district court can infer additionally the extent to which the loads delivered to Mobil by Cajun were short.[20]

---

evidence.

[20]We also note that, during a discussion with counsel, the court stated:

> "Do you think that this is going to prove that on certain days, on a certain sale made by Cajun to Mobil, they sent a truck over there loaded with so many tons, that I'm going to take an average? I don't think that's possible. You can't take an average."

It is unclear whether the district court was refusing to allow Mobil to prove Cajun's routine practice with average loads or whether the district court was refusing to assess damages based on an average shortfall calculated over all loads to Mobil. Our analysis of Rule 406 has addressed the first issue, and we note that, if Mobil proves by Rule 406 evidence that Cajun routinely short-loaded its trucks, the district court may use averages and formulas to assess damages. Although the burden is on the plaintiff to prove damages, *Borden, Inc. v. Howard Trucking Co.,* 454 So.2d 1081, 1092 (La.1983), once the plaintiff establishes a legal right to recover, the court may not reject the claim for lack of an exact measure. *See Austin v. Parker,* 672 F.2d 508, 522 (5th Cir.1982) (approving old rule that " "[i]t is sufficient that there be proved a reasonable basis of computation, although the result may be only approximate.' " (quoting *Rynveld v. Dupuis,* 39 F.2d 399, 400 (5th Cir.1930) (emphasis omitted))); *Nat Harrison Assocs.,* 491 F.2d at 588 ("We do not imply that in considering the measure of damages absolute accuracy is a precondition to ... recovery."); *see also Guillory v. Terra Int'l, Inc.,* 613 So.2d 1084, 1090 (La.Ct.App.1993) ("The law, however, is also well settled that when there is a legal right to recover damages, but the amount cannot be exactly estimated, the courts have reasonable discretion to assess damages based upon all of the facts and circumstances of the particular case. A plaintiff's demand should not be rejected merely because he cannot establish, with precision, the amount of damages suffered."), *writ denied,* 619 So.2d 1063 (La.1993). The court has discretion to assess damages, *See* La.Civ.Code Ann. art. 1999 (West 1987) ("When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable amount of the damages."); *Jordan v. Travelers*

Cajun argues t hat Mobil's proffered basis for damages is insufficient under *Martin v. T.L.*

*James & Co.,* 237 La. 633, 112 So.2d 86 (1959).  We disagree.  In *Martin,* the Louisiana Supreme

Court rejected an attempt to prove shortages in deliveries because:

> The method employed by the defendant in arriving at the amounts of the claimed shortages is simply to take the total figures supplied to it by the Department of Highways of materials used in the road project, and deduct the amount of materials bought from and supplied by a number of other suppliers, and then by a complicated system of allowances for moisture content, stockpile losses, recoveries from a cave in, it comes up with a figure which represents the amount of material supplied by [the plaintiff], and thereby determines his shortage....  [T]here is nothing to convince this Court that the measurements of material supplied by such parties were any more accurate than those made by [the plaintiff].

*Id.* 112 So.2d at 94.  Thus, the court in *Martin* ruled that the defendant had not proven entitlement

to damages because it failed to take into account that other suppliers could have caused the alleged

shortages.[21]  In this case, Cajun was Mobil's only limestone supplier.  Therefore, if Mobil has proven

shortages in Cajun's limestone deliveries, Cajun can be the only supplier responsible, and *Martin* is

distinguishable on its facts.  Moreover, *Martin* has no bearing on the issue of whether a party can use

evidence of a routine practice to establish under Rule 406 an entitlement to damages because the

method of proof offered in *Martin* did not involve Rule 406 evidence and was substantially different

from that offered in this case.  As explained above, a party can use Rule 406 evidence to establish

damages, and *Martin* does not alter that rule.  Consequently, *Martin* does not control the outcome

---

*Ins. Co.,* 257 La. 995, 245 So.2d 151, 155 (1971) ("Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all the facts and circumstances of the case.");  and it should determine each case on its own facts and circumstances.  *Nat Harrison Assocs.,* 491 F.2d at 587;  *see also Hall,* 368 So.2d at 991 ("The sufficiency of proof of damages must be determined in relation to the particular contract at issue and the circumstances surrounding its breach.  The question of the certainty of proof of damages becomes a matter for decision in each individual case.").  Moreover, courts often use averages or formulas to estimate damages.  *See, e.g., Austin,* 672 F.2d at 521 (using formula to assess damages);  *see also, e.g., Borden,* 454 So.2d at 1093 (using formula and estimates to calculate quantum of damages once plaintiff had proven entitlement to damages);  *Guillory,* 613 So.2d at 1090-91 (using formula and average crop yields to assess damages);  *Moore,* 524 So.2d at 831-32 (choosing one of several potential formulas and calculating damages from averages proven);  *LeBlanc v. Gibbens Pools, Inc.,* 447 So.2d 1195, 1197 (La.Ct.App.1984) (using "two different but substantiated estimates" to assess damages), *writ denied,* 450 So.2d 958 (La.1984).

[21]*See also Nat Harrison Assocs.,* 491 F.2d at 587 (refusing to affirm damages because of inclusion of losses to third parties).

of this issue, and Cajun's argument has no merit.[22]

### III

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for further consideration consistent with this opinion.

. . . . .

---

[22]Cajun also contends that we should sanction Mobil for filing a frivolous appeal. Given that we hold the Mobil's appeal is meritorious, we deny Cajun's motion for sanctions.