808 So.2d 407 (2000)
Belinda LEE, et al.
v.
Rosa TAYLOR, et al.
No. 00 CW 1361.
Court of Appeal of Louisiana, First Circuit.
December 15, 2000.
*408 Keith Borne, Layfayette, for Defendant/Applicant Safeway Insurance Company.
William B. Collier and Gregory L. Tweed, Baton Rouge, for Plaintiffs/Respondents Belinda Lee, et al.
Before: LEBLANC, WHIPPLE, and KUHN, JJ.
PER CURIAM.
This matter is before us on an application for supervisory writs wherein Safeway Insurance Company seeks review of the trial court's judgment denying its motion for summary judgment.

FACTS
Belinda Lee, individually and on behalf of her minor daughter, Linda Lee, filed suit seeking damages for injuries the child sustained. Plaintiff alleged that on March 16, 1996, Brittany Taylor, the nine year old daughter of Monique Taylor and grand-daughter of Ms. Rosa Taylor (Rosa Taylor is hereinafter referred to as "Ms. Taylor"), was attempting to operate a 1990 Chrysler LeBaron owned by Ms. Taylor, with nine year old Linda as a guest passenger. According to the petition, Brittany placed the car in reverse, suddenly, and the vehicle backed up uncontrollably, causing Linda to be ejected and injuring her. Plaintiff filed suit against Ms. Taylor, Monique Taylor, and relator, Safeway Insurance Co., the liability insurer of the vehicle. Plaintiff alleged that, based on information and belief, Ms. Taylor allowed the minor child access to both the car and the keys, and, thus, was negligent in her supervision of Brittany and of the vehicle.
Relator answered and later filed a motion for summary judgment (MSJ), contending that there was no coverage due to the fact that Brittany was operating the vehicle without Ms. Taylor's permission. Relator attached the insurance policy and the deposition of Ms. Taylor to its MSJ. The policy provided that the insureds under the policy with respect to the owned automobile are the named insured and "any other person using such automobile to whom the named insured has given permission, provided the use is within the scope of such permission."
In her deposition, Ms. Taylor testified that at the time of the accident she lived alone and that Brittany lived about four blocks from her. On the day of the accident, Ms. Taylor went to work at 5 a.m. in her car and left work at 1:00 p.m. She was alone in her house before going to work; Brittany did not spend the night with her. While she was at work, her house was locked. She arrived home about 1:15 p.m., and no one was at her house. She testified that she parked her car in the driveway, went in her bedroom, put her keys in the second drawer from the top of the dresser, closed the drawer, and pulled the door to *409 her bedroom closed. Ms. Taylor stated that she had two sets of keys for the car, one of which she kept in a special drawer in her dresser in her room and the other which was hidden from everyone. She went to sleep on her living room sofa.
According to Ms. Taylor, when she arrived at her house, she did not see Brittany or Linda. She testified that she did see them before she went to sleep. She explained that she saw them playing on the porch that she and her neighbor shared in the apartment complex they lived in. Brittany was visiting Linda at Linda's grandmother's house, which was next door to Ms. Taylor. According to Ms. Taylor, she did not talk to the girls. She testified that she did not lock her apartment door and that she normally did not lock it.
Ms. Taylor woke up from a deep sleep when another neighbor came by and told her about her car, which was across the street in another neighbor's yard. She was told the accident happened at about 2:56 p.m. She testified that she later talked to Brittany about the accident and Brittany told her that she went in her house and took the keys out of the drawer. According to Ms. Taylor, Brittany knew where she kept her keys because she was in and out of her house to visit.
Ms. Taylor testified that before the day of the accident, Brittany had never driven the car and had never even asked to drive it, nor did she ask to use the car on that day. According to Ms. Taylor, the first time she knew that Brittany was driving the car was when she woke up and saw it across the street. Ms. Taylor said that Brittany had not driven a car before, to her knowledge. Ms. Taylor said that Brittany would have been familiar with her habit of putting her keys in her dresser drawer. When asked if Brittany played with her keys in the past, Ms. Taylor explained that she always put her keys up because she never wanted to have to look for a set of keys. Ms. Taylor said that Brittany did not do what she was told to do. Ms. Taylor testified that this was the first time that any of her thirteen grandchildren ever took her car without permission and that, on that day, she had no idea that Brittany would sneak into her bedroom, take her keys, and start her car. She said she never thought a nine year old would do such a thing. Ms. Taylor testified that on the day of the accident she was not asked by anyone to watch the girls or to babysit. Ms. Taylor testified that she had never babysat Brittany in 1996 because she worked and that she also did not think Brittany had spent the night with her in 1996. Ms. Taylor stated that Linda's grandmother was supposed to be watching Linda and Brittany. Ms. Taylor testified that she knew of no reason why anyone would make the allegation that she was supposed to be watching the children on that day because she didn't babysit at that time due to her job.
There was no evidence submitted in opposition to the MSJ. Plaintiff relies on the language in the policy that relator's liability is "To pay on behalf of the insured, but only to the extent of the applicable policy limits, all sums which the insured shall become legally obligated to pay as damages because of: A. bodily injury, or B. property damage, arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile...."
The trial court signed a judgment denying the MSJ. From this judgment, relator seeks writs.

DISCUSSION
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to *410 material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ. P. art. 966(B). In 1997, the legislature enacted La.Code Civ. P. art. 966(C)(2), which further clarified the burden of proof in summary judgment proceedings, providing:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
This amendment first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial. Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Babin v. Winn-Dixie Louisiana, Inc., 00-0078 (La. 6/30/2000), 764 So.2d 37.
The insured bears the burden of proof to establish every fact essential to a cause of action under the policy coverage. Eudy v. State Farm Mut. Auto. Ins. Co., 620 So.2d 405 (La.App. 1 Cir.), writ denied, 625 So.2d 1041 (La.1993). Relator contends that it is undisputed that there is no coverage under this policy because Brittany was not operating the vehicle with the permission of Ms. Taylor and because Ms. Taylor had no independent negligence for the actions of Brittany. In Manzella v. Doe, 94-2854 (La. 12/8/1995), 664 So.2d 398, the court noted that the plaintiff has the burden of proving the fact of initial use with express or implied permission of the insured to make coverage effective under an omnibus clause. Moreover, the fact of initial permission must be proved by a preponderance of the evidence without the aid of any presumptions. Generally, implied permission arises from a course of conduct by the named insured involving acquiescence in, or lack of objection to, the use of the vehicle. Plaintiff did not meet the burden of proving that Brittany had Ms. Taylor's express or implied permission to drive the vehicle in order for there to be coverage under relator's insurance policy. Ms. Taylor's testimony was uncontradicted that nine year old Brittany did not have her express permission to drive the car. Her testimony was also uncontradicted that she placed the key to the car in a drawer in the bedroom of her apartment, closed the drawer, shut the door to the room, and went to sleep on her living room sofa. She was not caring for Brittany at the time of her nap and had not spoken to the child, who was playing on the front porch of Ms. Taylor's and the neighbor's apartment with the neighbor's granddaughter. Under these circumstances, there was no implied permission for Brittany to drive the car.
*411 According to plaintiff, she is not contending that Brittany is a permissive user of Ms. Taylor's vehicle, but is relying on the language in the policy that relator's liability is
To pay on behalf of the insured, but only to the extent of the applicable policy limits, all sums which the insured shall become legally obligated to pay as damages because of: A. bodily injury, or B. property damage, arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile....
(emphasis added).
Plaintiff argues that Ms. Taylor's deposition testimony that she was not negligent is self-serving and that her failure to prevent access to her keys constituted negligence because plaintiff classifies cars as extremely dangerous instrumentalities, which require a heightened level of garde.
Relator contends that even assuming there would be coverage under the automobile liability policy for Ms. Taylor's alleged negligent supervision of Brittany, there are no issues of material fact regarding her lack of liability because she was not negligent in failing to supervise the child. Relator further argues that under a duty risk analysis, Ms. Taylor had no duty to prevent the minor child, who was being cared for by a neighbor, from gaining access to her car keys which were inside her apartment in a closed dresser drawer. Plaintiff contends that there are genuine issues of fact as to Brittany's ability to obtain her grandmother's keys. Plaintiff refers to Ms. Taylor's testimony that Brittany often did not do what she was told and that she knew Brittany was nearby prior to the accident. Plaintiff argues that it was reasonable to assume that Brittany would stop by Ms. Taylor's home and that, because she did not do what she was told and because she knew where the keys were, Ms. Taylor owed a stricter duty to prevent Brittany from gaining access to the car keys. Plaintiff argues that had Ms. Taylor kept a gun in her dresser, there is no doubt she would bear some or all of the responsibility if Brittany would have used the gun to injure someone.
Relator pointed out to the court that there was an absence of factual support for an essential element of plaintiff's cause of action because Ms. Taylor's deposition presents uncontested evidence of her lack of negligence. Ms. Taylor did not owe a duty to prevent her minor granddaughter from gaining access to her car keys which were inside her apartment in a closed dresser drawer in her bedroom while Ms. Taylor slept on the sofa in the living room where Ms. Taylor was not supervising Brittany at that time and had not even spoken to Brittany at that time. While Ms. Taylor's door was not locked on the date of the incident, it cannot be reasonably said that she had a duty to lock her door to prevent someone from coming into her home, stealing her keys and using her car. The evidence presented by relator is uncontroverted by plaintiff who had the burden of proof as to coverage. Therefore, the trial court erred in denying the motion for summary judgment. The judgment signed June 12, 2000, is reversed and judgment granting the motion for summary judgment is rendered in relator's favor, dismissing the suit against Safeway Insurance Company. We assess costs to the plaintiff.
WRIT GRANTED.