986 So.2d 153 (2008)
Robert J. COMEAUX, Jr. and Lisa B. Comeaux
v.
STATE FARM FIRE AND CASUALTY COMPANY.
No. 07-CA-957.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 2008.
Richard C. Trahant, Attorney at Law, Metairie, Louisiana, for Plaintiffs/Appellants.
*154 W. Marvin Hall, David K. Persons, Hailey, McNamara, Hall, Larman, & Papale, L.L.P., Metairie, Louisiana, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS, and GREG G. GUIDRY.
MARION F. EDWARDS, Judge.
At issue in this appeal is the amount of coverage due plaintiffs/appellants for additional living expenses ("ALE") after Hurricane Katrina under their homeowner's insurance policy with State Farm Fire and Casualty Company ("State Farm"). All other homeowner and flood claims, both building and contents, have been settled. Additionally, plaintiffs/appellants, Robert and Lisa Comeaux, received $2,500 in ALE under their homeowner policy. Thus, the narrow issue before this Court is whether the Comeauxs are due any additional funds for ALE. We affirm.
The Comeauxs filed this action alleging that State Farm arbitrarily and capriciously denied their claim for ALE after being provided with adequate proof of loss and written demand. In its answer, State Farm asserted the policy limited ALE to a covered loss under the homeowner policy. It further asserted that the Comeaux home was uninhabitable due to flood waters, not a covered peril in the homeowner policy.
After a trial on the merits, the trial court rendered judgment in favor of State Farm, dismissing plaintiffs/appellants' action. The Comeauxs have filed a timely appeal from that judgment.
A certified copy of the insurance policy in question is contained in the record. Section I-Coverages of the policy includes the following relevant clause:
COVERAGE C-LOSS OF USE
1. Additional Living Expense. When a Loss Insured caused the residence premises to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.
Further, Section I-Losses Not Insured provides in pertinent part as follows:
2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
. . .
c. Water damage; meaning:
(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, of spray from any of these, all whether driven by wind or not; ...
The parties agree on the contents of the policy and the exclusion of flood water from ALE. State Farm also acknowledged the home sustained wind damage and paid the damages for that claim, as well as the flood. State Farm also paid $2,500 dollars on the ALE claim. However, the Comeauxs *155 assert they are entitled to $21,148.77 in ALE.
The Comeauxs argue that their home was uninhabitable for one year due to wind damage. The Comeauxs also argue they could not live in the house because of their son's asthmatic condition and that difficulty finding a contractor after Katrina delayed the process of repairing the damage.
State Farm asserts the reason the house was uninhabitable for so long was because it had about three feet of flood water in it. State Farm reasons that, because the wind damage to the home was relatively minor and the flood damage was extensive, the $2,500 ALE is sufficient to meet its obligation under the policy.
The adjuster on the case, James Garnett ("Garnett"), testified at trial that he retired from the employ of State Farm in 2004, and, at the time of Hurricane Katrina, was working for Eberl's Insurance as a temporary adjuster. Garnett explained that State Farm engaged independent adjusters to help with the large amount of claims resulting from Hurricane Katrina. Garnett was the adjuster on the damage owed pursuant to the homeowner policy. A separate adjuster was assigned to the flood policy. Garnett went out to the Comeaux home to asses the damage in October of 2005.
In November 2005, he completed his report and assessed the wind and wind-driven rain damage at $14,627.83. That amount included $10,087.16 for damages to the building, $4,087.50 for contents, and $2,500.00 for ALE.[1] The amount actually paid under the homeowner's policy for the building and contents was reduced by the applicable deductibles. The payment for contents included outdoor furniture and play equipment. The only contents in the home that were damaged by wind were the children's toys located in the second floor play room. The home also sustained extensive flood damage on the first floor.
A floor plan of the Comeaux home is included in the record. It shows that the home is a one and a half story, with most of the living area, including the kitchen, living room, den, and three bedrooms, downstairs. The second floor consists of a play room and a bathroom.
Garnett testified that there was some roof damage, gutter damage, and some wind-driven rain that wet the insulation in the ceiling, as well as the walls and floors upstairs. However, the damage was not extensive. Interior repairs necessary for the upstairs game room consisted of installing new carpeting, repairing a seam in the drywall, and painting the ceiling and walls. The water damage was minimal.
Downstairs there was wind-driven water damage to a very small area of the ceiling in the master bedroom and the perimeter of the living room. In the living room, the ceiling and crown molding needed to be replaced. The master bedroom only required a small patch in the ceiling. There were a few other small water stains downstairs that required painting.
After the assessment of the damage, Garnett recommended that the claim for further ALE payments be denied. Garnett stated he made that recommendation because the damage caused by the wind and wind-driven rain did not make the home uninhabitable for very long. Garnett stated that the replacement of the living room ceiling would take about one day, and the area could be sealed off to ensure proper dust removal. He testified that wind damage did not render the house *156 uninhabitable and all repairs would take about five days to complete.
Robert Comeaux testified the family had hired E.J. Miller ("Miller") to build a new home, and construction had begun one month before the storm. They planned to sell the home in which they currently lived upon completion of the new home. When Hurricane Katrina came, the family evacuated to Dallas.
When the family returned home around Thanksgiving, Mr. Comeaux contacted Miller to see if repairs to the flooded home could be made in addition to the construction of the new home. Miller, who did only new home construction, agreed to work on the damaged home because of the business relationship he had with the Comeauxs. Repairs to the damaged home began in February of 2006. The family moved into their new home in September of 2006 and, about that time, the repairs were completed to the old home. The contractor completed all repairs from both flood and wind damage. The newly repaired home was sold on October 31, 2006. Between the time they returned from Dallas and their new home was completed, the family rented a small home nearby. Mr. Comeaux stated that if he felt his family could live in the damaged home, they would have moved into it while waiting for the new home to be completed.
Mr. Comeaux conceded that the extensive flooding of the home made it uninhabitable. However, he also maintained that the wind damage alone was enough to render the home uninhabitable. Mr. Comeaux admitted that he was compensated for the wind-driven damage to the ceilings in the living room and master bedroom, as well as the water damage upstairs. He was also paid under the flood policy to replace all the sheetrock downstairs to a height of four feet, and for other repairs necessary, including replacing all floors, appliances, and cabinets.
Mr. Comeaux stated that, when he first came back after Katrina, the ceilings downstairs were wet and moldy. The upstairs carpet was wet, and there were water marks and stains next to the dormer windows. He asked Garnett if the family could get ALE payments. Garnett advised him to have an attorney write a letter, and he would forward it to a State Farm manager. Mr. Comeaux got the letter and gave it to Garnett in December of 2005. Garnett advised Mr. Comeaux at that time that he would have to give the claim to a State Farm manager for consideration. However, Garnett did not indicate the claim may be denied.
Mr. Comeaux testified that his son was diagnosed with asthma shortly before Hurricane Katrina. However, he could not recall specific times the child had symptoms or had to be taken to a doctor for treatment. He stated that he would have to defer to his wife for that information. He admitted that he did not submit anything from a doctor to verify his son's condition.
Mrs. Comeaux testified regarding her son's medical condition. She stated that, just after the evacuation to Dallas in September of 2005, the child had an asthma attack and had to be taken to a doctor for treatment. However, he has not had any attacks since then. Mrs. Comeaux stated that her son plays football, baseball, basketball, and soccer and has never had another asthma attack. She further acknowledged that she was never told by any doctor that her son could not live in the damaged home.
Garnett stated that the policy also excludes mold damage. Thus, any mold that contributed to the conditions making the house uninhabitable would not warrant ALE. Garnett acknowledged that, although *157 the policy contains an exclusion for mold damage, State Farm's operational guidelines show that the company paid for mold damage when it was a result of a covered loss, rather than the actual cause of the damage. For example, moldy sheetrock would be replaced where the mold was caused by wind-driven rain damage. However, Garnett testified that, in his opinion, the vast majority of the mold was caused by the standing flood water in the home.
Garnett acknowledged that he wrote a letter to State Farm in October of 2005 in which he stated that the Comeauxs had rented an apartment in Dallas and would be making a claim for ALE. In that letter, Garnett also advised State Farm that the Comeaux's nine-year-old son had asthma and that it would be impossible for them to live in the house, even without the flood damage. Garnett testified that he received this information from the Comeauxs' lawyer but had no documentation to show that one of the children had asthma.
Garnett received other receipts for ALE subsequent to the payment of the wind and flood loss, which were submitted and discussed with Greg Baker ("Baker"), a representative of State Farm. Ultimately, the additional claim was denied pursuant to the flood exclusion in the homeowner policy.
Baker, a catastrophe claims adjuster and "team leader" for State Farm, testified that he had the authority to decide which claims would be covered. He reviewed the reports and photos of the Comeaux home submitted by Garnett. Baker made the decision to deny the claim for further ALE, although the denial letter was signed by a claims manager.
B.J. Lively ("Lively"), the team manager coordinating the Harahan catastrophe office for State Farm, testified at trial. He explained that his name appeared on much of the correspondence to policyholders regarding their claims after Katrina because he was from Louisiana and would be here after the adjusters brought in from around the country had left. That way, the policyholder would have a local person they could call for assistance. Lively also reviewed the coverage for ALE under the State Farm homeowner policy and confirmed that ALE is not available for flood loss. He reviewed the adjuster's report and recommendation and the photos of the damaged property and determined that the additional claim for ALE was correctly denied.
After the trial, the trial judge rendered judgment in favor of State Farm. In written Reasons for Judgment, the court found that State Farm made a sufficient investigation into plaintiffs/appellants' ALE claim and found that the wind damage was minor compared to the extensive damage from flood water that engulfed the home. It is also clear from the Reasons for Judgment that the trial court did not find the Comeauxs proved their assertions that they could not find a contractor to do the work or that their child could not live in the home because of his asthmatic condition.

LAW AND ANALYSIS
An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation set forth in the Louisiana Civil Code. Language in an insurance policy that is clear, expresses the intent of the parties, and does not violate a statute or public policy, must be enforced as written.[2] *158 The insurer bears the burden of proving the applicability of policy exclusions.[3]
In the matter before us, there is no controversy between the parties concerning the meaning of the policy, or the exclusion of ALE for flood damage. The only issue was a factual one. The trial court was called upon to make a finding of fact regarding whether the home was rendered uninhabitable for a year due to wind or flood damage.
Our review of a finding of fact by a trier of fact is the manifest error/clearly wrong standard. In applying that standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong.[4]
Here, the trial court found that the extensive flood damage far outweighed the wind damage. The court also found that the Comeauxs' reasons for not moving back into the house related more to the flood damage issues than the lack of availability of contractors or health issues.
We also note that, although the insurer has the burden to show an exclusion applies, we find that State Farm here is not relying on an exclusion to avoid paying the claim. The facts are that State Farm acknowledged that ALE was due pursuant to the homeowner policy and paid accordingly. The issue here is whether the payment was sufficient to meet State Farm's obligation. That is a factual matter for the trial court to decide.
Given the record before us, we do not see that to be an unreasonable interpretation of the facts presented. Accordingly, we cannot find manifest error.
For the foregoing reasons, the judgment on appeal is affirmed.
AFFIRMED.
NOTES
[1] Separate checks were also paid for flood damage to the structure and the contents. However, the flood policy is not at issue herein.
[2] Hayne v. Woodridge Condominiums, Inc., 06-923 (La.App. 5 Cir. 4/11/07), 957 So.2d 804; LSA-C.C. arts. 2045-2057
[3] Terrebonne v. Cheramie, 06-843 (La.App. 5 Cir. 2/27/07), 952 So.2d 833, writ denied, 07-0842 (La.6/15/07), 958 So.2d 1192.
[4] Turner v. Delta Beverage Group/Pepsi America, 07-529 (La.App. 5 Cir. 11/27/07), 973 So.2d 764.