# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 11, 2010

No. 09-30161

Lyle W. Cayce
Clerk

WILLIAM BAYLE; DARLENE BAYLE

Plaintiffs - Appellants

v.

ALLSTATE INSURANCE COMPANY

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before DAVIS, WIENER, and SOUTHWICK, Circuit Judges.

WIENER, Circuit Judge:

In this appeal, we are called on to address one of the recurring questions encountered in hurricane-related property insurance disputes that are governed by Louisiana law: When the insured and the insurer agree that both a covered risk and a non-covered or excluded risk caused some of the damage incurred by the insured property, which party must bear the burden of identifying the discrete item or items of property that were damaged and proving what portion of the damage was caused by the non-covered or excluded risk?  Here, siblings

No. 09-30161

William and Darlene Bayle[1] sued Defendant-Appellant Allstate Insurance Company ("Allstate"), which had issued the Bayles' homeowners policy. They alleged that (1) Allstate failed to indemnify them adequately for wind-caused, structural damage[2] to their property, and (2) Allstate wrongly employed the "actual cash value" ("ACV") of the property rather than the "building structure reimbursement" standard to calculate the dollar amount of structural damage caused by wind. The Bayles also claim statutory penalties against Allstate, alleging that it arbitrarily and capriciously refused to pay their wind damage claims timely.[3] The district court granted Allstate's motion for summary judgment and dismissed the Bayles' action.[4] We affirm.

## I. Facts & Proceedings

### A. Background

Hurricane Katrina caused considerable damage to the Bayles' property in Chalmette, Louisiana. Ms. Bayle evacuated before the storm, and no one was present in the house when eight to ten feet of water (mixed with escaped oil from a nearby Murphy Oil storage tank) flooded the Bayles' one-story house. The damage to the house and a storage shed was, by all accounts, extensive,

---

[1] Only Darlene Bayle occupied the insureds single-family, single-story residence at issue here.

[2] In the district court, the Bayles also challenged the amount that they recovered for damage to contents and "additional living expenses" ("ALE") in the district court, but they appear to have waived entirely their contents and ALE claims on appeal.

[3] LA. REV. STAT. ANN. §§ 22:1220 & 22:658, redesignated §§ 22:1973 & 1893 by Acts 2008, No. 415, §1, eff. Jan. 1, 2009. .

[4] The district court had also granted Allstate's motion to exclude a supplemental expert report by the Bayles' expert. The Bayles do not appeal the exclusion of their supplemental expert report.

No. 09-30161

although the record reveals that little of the damage appears to have been caused by wind.[5]  Ms. Bayle testified that, when she returned to view the wreckage, she saw just one cracked window pane in one of the bedrooms and that she was not able to look in the attic for roof damage.  In his deposition testimony, Mr. Bayle noted that, when he viewed the damage in November 2005, he saw one or perhaps two small window panes that were broken, but conceded that these could have been damaged by vandals. Neither of the Bayles was able to identify or specify any structural damage that had gone uncompensated or, for that matter, any items damaged by wind whose repair costs exceeded the amount paid by Allstate; the Bayles' expert's report was silent on both issues.

In October 2005, the first claims adjuster was sent by Allstate to inspect the Bayles' property.  He noted that the water line on the exterior of the house was ten feet above grade level and that an interior water line was eight feet above floor level.  He observed severe damage to the interior and to the contents of the house, all of which he attributed to flood.  He added that no contents could have been salvaged.  Subsequent adjusters for Allstate inspected the roof and found a number of shingles missing and some damage to the gutters, but saw no substantial structural damage. They also reported that the storage shed had lost a side window to wind and that some items inside the shed appeared to have been exposed to rain water before the flood water arrived.

---

[5] *Aronson v. State Farm Fire and Casualty Co.*, 969 So.2d 671, 675 (La. App. 4th Cir. 2007) (explaining that evidence of a "wind-created opening and the passage of rain through those openings into the damaged property are conditions precedent to recovery" and that "[i]n order to satisfy the aforementioned conditions, the insured need not establish that the wind actually created a hole in the structure, but instead must only demonstrate that the direct force of the wind created an opening in the building through which water entered.") (citing COUCH ON INSURANCE § 153:17 (3d ed. 2006)).

No. 09-30161

At the time of the hurricane, the Bayles' property was insured under an Allstate homeowners policy that covered wind damage and under a separate, National Flood Insurance Policy ("NFIP") that covered flood damage. As the administrator of the federal flood policy, Allstate paid the Bayles the full policy limits of $75,000 for structural damage and $30,000 for contents, for a total of $105,000 in flood damage. Under its homeowners policy, Allstate paid the Bayles $3,628.87 for structural damage to the roof, $8,804.22 for personal property, and $5,127.64 in additional living expenses ("ALE"), for a total of $17,560.73 in wind damage.

The overall damage to the house was sufficiently severe that the Bayles elected not to repair it; instead, they "sold" it and the lot for $64,000, unrepaired, to Murphy Oil in connection with the settlement of their petroleum spill claim. The remnants of the house were subsequently demolished. The record does not reflect that either of the Bayles objected to or otherwise contested Allstate's adjustment of their claim before they filed suit in August 2007. In doing so, the Bayles joined twenty-eight other state court plaintiffs.

## B.   District Court Proceedings

In February 2008, following removal from state court, the district court ordered the cases severed, and the Bayles filed their individual complaint the next month. In November 2008, Allstate filed a motion for summary judgment seeking dismissal of the Bayles' action.

The Bayles' homeowners policy provides that, if the insureds do not repair their damaged property, payment under the policy "will be on an actual cash value basis." In support of its motion for summary judgment, Allstate offered three expert-witness reports to substantiate the ACV of the Bayles' property and

No. 09-30161

to justify the sums that Allstate had already paid them under its policy's wind coverage. Allstate's first expert report, prepared by Timothy O'Brien in November 2008, offered a "drive-by" market-value appraisal of the then-vacant lot, and determined its ACV to be $10,000.

Allstate offered a second expert report by an engineering and construction firm, O'Keeda Company, LLC ("O'Keeda"), which reviewed the damage to the house relative to the payments made under the flood and wind policies. O'Keeda too performed its review in November 2008, basing it on photographs, videotape, adjusters' reports, and the Bayles' deposition testimony. The O'Keeda report stated that the roof of the house was "completely unscathed," with the exception of some missing shingles, and concluded that adequate compensation had been paid for all damage caused by wind. In a supplemental report, again from November 2008, O'Keeda concluded that the ACV of the damage incurred by the Bayles' property totaled $108,220.00. Allstate's earlier ACV estimate of the house, as detailed in its NFIP Final Report and dated October 25, 2005, had stated that the ACV of the house was $74,284.80.

In opposing Allstate's motion for summary judgment, the Bayles' only submission was a report prepared by Steven Hitchcock, a claims adjuster who estimated the total cost of repairing and replacing the house. He based his conclusions on interviews with the Bayles and computer software used to estimate insurance, restoration, and remodeling costs. After offering a line-item listing of the materials and labor needed to restore the entire property, irrespective of whether the cause of the damage was wind or flood, or a combination of both, Hitchcock concluded that the total replacement cost value ("RCV") of the Bayles' house was $182,863.13. He ventured no ACV.

No. 09-30161

The district court granted Allstate's motion for summary judgment, dismissing the Bayles' action. Relevant to this appeal,[6] the court held that (1) Louisiana law places the burden of segregating covered and non-covered losses on the insured, (2) as the Bayles had failed to point to any wind damaged items for which Allstate had not already compensated them, they were not entitled to any additional compensation for structural damage from wind; (3) ACV, not RCV, was the proper valuation standard for calculating the quantum of damages in this particular claims process, so the Bayles were not entitled to statutory penalties; and (4) the Bayles had adduced no competent evidence to support their assertion that Allstate had mishandled their claims.[7] The Bayles timely filed their notice of appeal.

## II.  ANALYSIS

### A.    Applicable Law & Standard of Review

When, as here, jurisdiction is based on diversity, we apply the forum state's substantive law.[8] The parties agree that Louisiana law applies.

We review a district court's grant of summary judgment de novo. Summary judgment should be granted only if there is no genuine issue of material fact.[9] A fact is material only if its resolution would affect the outcome

---

[6] The district court also granted Allstate's motion to exclude a supplemental expert report by Hitchcock, which addressed the issue of "segregating" covered from non-covered losses, finding it untimely and prejudicial to the defendant. The Bayles have waived this issue on appeal, so we do not address it.

[7] *Bayle v. Allstate Insur. Co.*, No. 08-1319, 2008 WL 5054572, at *2 (E.D.La., Nov. 21, 2008).

[8] *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).

[9] *Weeks Marine Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003).

of the action, and an issue is genuine only "if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."[10] "If the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case."[11] Once a party meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial.[12] The non-movant must go beyond the pleadings and present specific facts indicating a genuine issue for trial.[13] On appeal we may affirm a grant of summary judgment "on any legal ground raised below, even if it was not the basis for the district court's decision."[14]

## B.    Burdens of Proof & Burdens of Production

The parties vociferously disagree whether it is the insurer or the insured who must bear the burden of proving that the damage for which recovery is sought was caused by an insured risk (wind) or by an non-insured or excluded risk (flood) when, as here, *both* wind and flood contributed to the *overall* damage incurred by the property.[15] Neither party contends that any applicable provision

---

[10] *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[11] *Miss. River Basic Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).

[12] *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552 (1986).

[13] *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).

[14] *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003) (citing *In re Williams*, 298 F.3d 458, 462 & n. 5 (5th Cir. 2002)).

[15] The Bayles also assert in the alternative that federal law requires the insurer to "segregate" or "allocate" damage. The Bayles point to federal law governing private insurers who administer federal flood insurance policies, and contend that particular provisions require

## No. 09-30161

of the Allstate policy is ambiguous, and the Bayles do not seek—as have insureds in other cases—additional benefits under a *named peril* policy or under a policy that contains an *anti-concurrent cause* provision.[16] And, unlike many hurricane-damaged properties, the Bayles' house was not reduced to its foundations or to but a slab. As framed by the parties, the issue is simply whether Allstate has the burden of proving that all uncompensated damage was caused by flood and thus not covered by its policy's wind provision,[17] or whether, instead, Allstate may be granted summary judgment merely by pointing out the Bayles' failure to proffer sufficient evidence to support their claim that wind, rather than flood, caused their uncompensated (or under-compensated) damage.

The Bayles rely on language from our recent decision in *Dickerson v. Lexington Insurance Company*[18] in asserting that, because both sides agree that *some* damage was caused by wind, the burden shifts to Allstate to put forward evidence that the additional compensation sought for wind-caused damage in fact relates to flood-caused damage. Allstate counters with two alternative

---

such private insurers to adjust both flood and wind claims simultaneously. The Bayles fail to take into account that no federal "single adjuster" program was ever created. 34 C.F.R. § 63.23(i)(1). As the Bayles cite no authority to support the proposition that this federal program was intended to displace state law governing the burdens of proof and production in breach of insurance contract claims, we do not address this contention.

[16] For our discussion and analysis parsing the relative evidentiary burdens in the presence of those types of insurance contracts, *see, e.g., Grilletta v. Lexington Ins. Co.* 558 F.3d 359 (5th Cir, 2009); *Broussard v. State Farm Fire and Cas. Co.*, 523 F.3d 618 (5th Cir. 2008); *Tuepker v. State Farm Fire & Casualty Co.*, 507 F.3d 346, 350-53 (5th Cir. 2007); *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 423 (5th Cir. 2007).

[17] This assumes, of course, that the insureds are or would be able to identify any uncompensated damage.

[18] 556 F.3d 290, 294-95 (5th Cir. 2009).

No. 09-30161

interpretations of *Dickerson*. It first contends that *Dickerson* did not change the "burden-shifting" rule articulated by the Louisiana Supreme Court in *Jones v. Estate of Santiago*, on which *Dickerson* expressly relied.[19] Alternatively, Allstate insists that our statement in *Dickerson* regarding the allocation of the burdens of proof under Louisiana law was dictum.[20] We consider these contentions in turn.

### 1.    *Dickerson* & *Jones*

When we apply state law, we "are bound to apply the law as interpreted by the state's highest court."[21] "If damage to immoveable property is covered, in whole or in part, under the terms of the policy of the insurance, the burden is on

---

[19] 870 So.2d 1002, 1010 (La. 2004).

[20] There does appear to be a lack of unanimity in the Eastern District of Louisiana regarding the effect of *Dickerson's* pronouncements. Some judges of that court appear to have adopted the view that *Dickerson's* discussion of the shifting burden of production under Louisiana law was dictum; others have expressed or demonstrated confusion regarding the rule it articulated. *See, e.g.*, *Adams v. Lexington Insur. Co.*, No. 06-11388, 2009 WL 362446, at *3 (E.D. La. February 11, 2009) (holding that "[t]he Court agrees that the [pertinent] language in Dickerson is dicta."); *Weiser v. Horace Mann Insur. Co.*, No. 06-9080, 2009 WL 5194970, at *4, n. 21 (E.D. La. April 6, 2009) (noting that "the Court expresses doubt that the Fifth Circuit actually altered the state of the law" in *Dickerson*); *Pontchartrain Gardens v. State Farm Insur. Co.*,No. 07-7965, 2009 WL 86671, at *11 (E.D.La January 13, 2009) (holding that "State Farm's motion mistakenly assumes that plaintiffs have the initial burden of segregating their wind and water damage. But under *Dickerson*, plaintiffs must prove only that the insured property sustained some wind damage."); *Lightell v. State Farm Fire and Cas. Co.*, --- F.Supp.2d ---, 2009 WL 4505942, at *3 (E.D.La. 2009) (rejecting insurer's argument that "the Fifth Circuit's interpretation of the burden shifting is simply dicta" and holding that "the holding in *Dickerson* and that the analysis of the burden shifting test was not dicta," and mandated that "Plaintiffs' burden at trial will be to prove that they are entitled to additional payments to damage to their property. Plaintiffs do not have the burden of segregating the damages based on covered and non-covered perils.").

[21] *FDIC v. Abraham*, 137 F.3d 264, 267-68 (5th Cir. 1998).

the insurer to establish an exclusion under the terms of the policy."[22] As we explained in *Dickerson*, the Louisiana Supreme Court in *Jones* addressed the respective proof burdens of the insurer and the insured, explaining that "the insured bears [sic] the burden of proving a policy of insurance affords coverage for an incident, [and] the insurer bears [sic] the burden of proving the applicability of an exclusionary clause within a policy."[23]

The plaintiff in *Jones* sought to recover damages from the defendant's homeowners policy for the shooting death of the plaintiff's wife. Because the shooting had to be either intentional *or* accidental and could not be both, the Louisiana Supreme Court was confronted with a straightforward issue of coverage: Was the shooting in question a covered risk (accidental death), or was coverage nullified by an exclusion? In *Jones*, the court ruled that the insurer's evidence in support of its motion for summary judgment "made a prima facie showing that the motion [for summary judgment] should be granted. *At that point, the burden shifted to the plaintiff to present evidence* demonstrating there remained a material issue of fact as to the issue of whether the shooting was accidental such that the exclusion did not apply."[24]

In *Dickerson*, we applied the rule articulated in *Jones*—a *summary judgment proceeding*—to an appeal challenging the sufficiency of the evidence to support a verdict for the insured rendered at the conclusion of a *bench trial*. Like the Bayles, the insured in *Dickerson* filed suit against the provider of his

---

[22] LA. STAT. ANN. REV. § 22:658(2)(B)(2007) redesignated § 22:1893(2)(B) by Acts 2008, No. 415, §1, eff. Jan. 1, 2009.

[23] *Jones*, 870 So.2d at 1010.

[24] *Id.* at 1011-1012 (emphasis added).

No. 09-30161

homeowners insurance, Lexington, alleging that it had breached the insurance contract by failing to pay the full amount owed under the policy. Also like the Bayles, the insured in *Dickerson* sought damages and statutory penalties for bad faith under Louisiana law.[25]    And, like the Bayles' policy with Allstate, Dickerson's policy with Lexington excluded coverage of damage from flood. Unlike the district court in the instant case, however, the district court in *Dickerson* adjudicated the claim after a bench trial, ruling in favor of Dickerson.

On appeal in *Dickerson*, Lexington specifically challenged the sufficiency of the evidence offered to prove that the damage was caused by wind. Because our review of the sufficiency of the trial evidence turns on the answer to the question which party had the burden of proof at trial, we articulated the respective burdens of production on the insurer and the insured under Louisiana law, stating that:

> [u]nder Louisiana law, the insured must prove that the claim asserted is covered by his policy. *Jones v. Estate of Santiago*, 870 So.2d 1002, 1010 (La. 2004); *Comeaux v. State Farm Fire & Cas. Co.*, 986 So.2d 153, 157-58 (La. App. 5th Cir. 2008). Once he has done this, the insurer has the burden of demonstrating that the damage at issue is excluded from coverage. *Jones v. Estate of Santiago*, 870 So.2d at 1010. Thus, once Dickerson proved his home was damaged by wind, the burden shifted to Lexington to prove that flooding caused the damage at issue, thereby excluding coverage under the homeowners policy. As no one disputes that at least some of the damage to the Dickerson home was covered by the homeowners policy, Lexington had to prove how much of that damage was caused by flooding and was thus excluded from coverage under its policy.[26]

---

[25] LA. REV. STAT. ANN. §§ 22:1220 and 22:658 (2007).

[26] *Dickerson*, 556 F.3d at 295.

11

No. 09-30161

We next reviewed the evidence adduced at trial by *both* Lexington and the insured, observing that "the question of flood versus wind damage essentially turned on witness credibility, as the quantity and quality of the evidence adduced by each party was similar."[27] We then affirmed the district court's judgment.

Even though in *Dickerson* we were not ruling on an appeal from a grant of summary judgment—where, "[i]f the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case"[28]—the proper allocation of the burden of proof necessarily implicated the standard of review of a challenge to the sufficiency of the evidence.[29] This is because "[t]he judge must view the evidence presented

---

[27] *Id.* at 295.

[28] *Miss. River Basic Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). *Celotex Corp. v. Catrett,* 477 U.S. 317, 32 (1986) "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . . The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.").

[29] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (holding that "we are convinced that the inquiry involved in a ruling on a motion *for summary judgment or for a directed verdict* necessarily implicates the substantive evidentiary standard of proof that would apply at trial on the merits.") (emphasis added); *Allstate Ins. Co. v. Receivable Fin. Co.*, L.L.C., 501 F.3d 398, 405 (5th Cir. 2007) ("A motion for judgment as a matter of law (previously, motion for directed verdict or J.N.O.V.) in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict."); *Hiltgen v. Sumrall*, 47 F.3d 695, 703 (5th Cir. 1995) ("We must be especially careful when reviewing the sufficiency of the evidence where the party seeking relief, the defendants in this case, had the burden of proof on the issue in question.").

## No. 09-30161

through the prism of the substantive evidentiary burden."[30]    In sum—and contrary to Allstate's first contention regarding the import of *Dickerson*—our articulation of the allocation of the burden of proof in *Dickerson* was not dictum, although Allstate was correct that it did not alter the rule set forth in *Jones*.

Neither, however, does *Dickerson* stand for the proposition advanced by the Bayles that the insurer alone must bear the burden of producing evidence to segregate covered losses from excluded losses, *at least not at the summary judgment stage.*  Both the Bayles *and* Allstate appear to confuse the burden of persuasion with the burden of production.  As the Louisiana Supreme Court made clear in *Jones*, and as our reasoning in *Dickerson* reflects, the insured must carry the burden of persuasion to establish that any uncompensated (or under-compensated) damage was caused by a covered peril. Simply put, this is what is meant by the rule that the insured must prove *coverage* under the policy.[31] Then, if the defendant-insurer wishes to avoid liability by relying on a

---

[30] *Anderson*, 477 U.S. at 252.

[31]  *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 123-24 (La. 2000) ("When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy.") (citations omitted); *Lee v. Taylor*, 808 So.2d 407, 410 (La. App. 1st Cir. 2000) ("The insured bears the burden of proof to establish every fact essential to a cause of action under the policy coverage."); *Whitham v. Louisiana Farm Bureau Cas. Insur.* Co., 34 So.3d 1104, 1107 (La. App. 2d Cir. 2010) ("In an action under an insurance contract, the insured bears the burden of proving the existence of policy and coverage.  The insurer, however, bears the burden of showing policy limits or exclusions" and therefore "[b]ecause La. Farm Bureau is relying on an exclusionary provision in the policy it has the burden of showing . . . that the F-150 truck was 'furnished for regular use' as required to satisfy the language of the exclusionary clause) (citations omitted)); *Landry v. Louisiana Citizens' Property Insur. Co.*, 964 So.2d 463, 478 (La. App. 3d Cir. 2007) (reviewing state law in the context of a challenge to indemnity for a total loss when both wind and flood contributed to the loss and concluding "proof of coverage, together with a[s]howing [sic] that wind damage was suffered during the course of a storm, *creates a rebuttable*

No. 09-30161

policy exclusion from coverage, *it* has the burden of persuasion to establish that the uncompensated or under-compensated damage is subject to an exclusion. Contrary to Allstate's second contention, we have found nothing in Louisiana law to suggest that these respective burdens of *persuasion* shift between the parties. What *does* shift—but only during the summary judgment stage—is the burden of *production*. Because *at trial* the defendant-insurer has the ultimate burden of persuasion that the exclusion is applicable, a defendant-insurer that moves *for summary judgment* must bear the burden of producing evidence to make out a "prima facie" case that the cause of the uncompensated or under-compensated damage was excluded from coverage. If the defendant-insurer does so, "the burden shift[s] to the [insured] to present evidence demonstrating there remain[s] a material issue of fact."[32]

As *Jones* makes clear, this simple, burden-shifting minuet arises from the effect of summary judgment on the burdens of production and not any shift

---

*presumption of causality.*"), *aff'd in part, vacated in part on other grounds by Landry v. Louisiana Citizens' Property Insur. Co.* 983 So.2d 66 (La. 2008); *Stewart v. Louisiana Farm Bureau Mut. Insur. Co.*, 420 So.2d 1217, 1219 (La. App. 3d 1982) ("the insurer has the burden of proving facts which limit its coverage") (citing *Mass. Protective Assoc v. Ferguson*, 168 La. 271, 121 So. 863 (1929)); *Comeaux v. State Farm Insur. Co.,* 986 So.2d 153, 154 (La. App. 5th Cir. 2008) ("although the insurer has the burden to show an exclusion applies, we find that State Farm here is not relying on an exclusion to avoid paying the claim . . . . [because] State Farm acknowledges that ALE was due pursuant to the homeowners policy and paid accordingly. The issue here is whether the payment was sufficient to meet State Farm's obligation.").

[32] *Whitham*, 34 So. 2d. at 1011-1012. COUCH ON INSURANCE § 175:9 (3rd ed. 2006) ("It is an insured's burden to produce evidence that would afford a reasonable basis for estimating the amount of damage or the proportionate part of damage caused by the covered peril and that by the excluded peril.").

No. 09-30161

between the parties' respective burdens of persuasion.[33] Because *Dickerson* addressed the sufficiency of the evidence adduced at *trial*, it was not concerned with the shifting of the burdens of production that characterizes summary judgment.

## 2.    Burdens of Production at Summary Judgment

Here, because Allstate moved for summary judgment, and because Allstate would have had the burden of proving at trial that flood, not wind, caused the uncompensated or under-compensated damage claimed by the Bayles, Allstate had the burden of producing evidence in support of its motion to establish that there existed no issue of material fact regarding the cause of the uncompensated or under-compensated damage for which the Bayles sought indemnification. Unlike the insurer-defendant in *Jones,* however, Allstate did not contest that a covered peril (wind) caused *some* of the damage to some of the Bayles' property; the question was which *particular items of property* were damaged by wind; or, put differently, what is the extent of the damage incurred by those items that

---

[33] Before undertaking its analysis, the *Jones* court explained that recent revisions to Louisiana's Code of Civil Procedure clarified the burden of proof in summary judgment proceedings such that "[t]he initial burden of proof remains with the mover to show that no genuine issue of material fact exists. If the mover has *made a prima facie showing* that the motion should be granted, the burden shifts to the non-moving party *to present evidence* demonstrating that a material factual issue remains. The failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion." *Jones,* 870 So. 2d at 1006, & n.5 (emphasis added). It is in this context that we read *Jones's* later statement that "we conclude that defendant *made a prima facie showing* that the motion should be granted. *At that point, the burden shifted to the plaintiff to present evidence* demonstrating there remained a material issue of fact as to the issue of *1011 whether the shooting was accidental such that the **14 exclusion did not apply." *Id.* at 1010. *Compare Celotrex Corp. v. Catrett,* 4778 U.S. 317, 331 (1986) ("The burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment . . . . The manner in which this showing can be made depends upon which party will bear the burden of persuasion on the challenged claim at trial.").

## No. 09-30161

was caused by wind. Complicating Allstate's task, however, was the fact that at no point did the Bayles identify *which particular damaged items* had gone uncompensated or under-compensated under their homeowners policy's coverage for structural damage.[34] They simply presented the court with a line-item cost estimate to repair *all* the damage to their property, without even attempting to explain which portion or portions of those costs are attributable to wind-caused damage.

In contrast, to support its motion for summary judgment Allstate proffered (1) the Bayles' deposition testimony, (2) its own adjusters' reports, and (3) the expert testimony of O'Keeda, which together specifically itemized and quantified the damage caused by wind as opposed to flood. The totality of this evidence demonstrates that the Bayles' one-story house took in eight to ten feet of water, that the roof and windows were left essentially intact, that oil from a nearby tank also contaminated the property, and that the amounts paid by Allstate under the policy's wind coverage—$3,628.87 for structural damage, $8,804.22 for contents, and $5,127.64 for ALE—were sufficient.

On appeal, the Bayles urge us (1) to find that the disparity between the gross amount of their estimate and the amount that they received from Allstate under their policy's wind coverage proves that some "uncompensated damage" does remain "uncompensated," and (2) to rule that Allstate cannot be granted summary judgment unless it produces evidence that "segregates damages"

---

[34] Although the Bayles also complained about the amount they received for contents damage under their homeowners policy's coverage, they have not briefed this issue on appeal so we deem it waived.

16

No. 09-30161

caused by wind from those caused by flood.[35] In so contending, however, the Bayles fail to recognize that when Allstate adduced evidence sufficient to establish a prima facie case that flood, not wind, caused any uncompensated or under-compensated damage complained of by the Bayles, the burden of production shifted to the Bayles to offer rebuttal evidence sufficient to create a genuine issue of material fact as to which, if any, uncompensated items of damage were caused by wind.[36] Unlike the plaintiff in *Dickerson*, the Bayles' expert report did not venture the causes of the damage to any particular items. The Bayles also failed to proffer any evidence to show that they were under-compensated for any damage admittedly caused by wind. Consequently, summary judgment was proper because the Bayles did not bear their burden of production after Allstate had produced evidence identifying those items of damage that were excluded from wind coverage because they were caused by flood.

---

[35] We note here that the Bayles appear to conflate the notion of damag*e* with damag*es*; the latter in fact being the dollar amount of the former, and we could find no suggestion in Louisiana law that insureds are ever relieved of the burden of proving damag*es*. *Mobil Exploration & Producing U.S., Inc., v. Cajun Constr. Servs.*, 45 F.3d 96, 101 (5th Cir. 1995) (holding that "'[u]nder Louisiana law, the plaintiff must prove damages with reasonable certainty. . . .").

[36] We note here that if the insureds have already recovered a sufficient amount under their *flood* policy for some damage allegedly caused by wind, the insureds may not recover twice by claiming the damage under its homeowners policy for wind damage. Although this rule appears to create perverse incentives when the flood insurer is the federal government and the wind-damage insurer is the private insurance company that also administers the federal flood policy, Louisiana law nevertheless bars insureds from recovering twice for the same damage. *Cole v. Celotex*, 599 So.2d 1058, 1080 (La. 1992). Indeed, if there ever be a case in which there appears to be any self-dealing by a two-hatted insurer under such circumstances, it would be the federal government and not the insureds that would have the putative reimbursement claim.

No. 09-30161

C.    **Valuation & the Sufficiency of the Amount Recovered for Structural Damages**

1.    **Valuation — ACV or "building structure reimbursement?"**

The Bayles also challenge the sufficiency of the payment they received for structural damage, claiming that their damages should have been calculated under the policy's "building structure reimbursement" provision.  Allstate (and the district court) rejected the proposition that any of the Bayles' structural damage should be calculated under the "building structure reimbursement" provision, maintaining that the Bayles were limited to the ACV of the property.

The Bayles' homeowners policy explicitly identifies when the policyholder may recover under the "building structure reimbursement" clause as opposed to recovering under the "actual cash value" clause:

> **(a) Actual Cash Value**: *If you do not repair or replace the damaged . . . property*, payment will be on *an actual cash value basis*.  This means that there may be a deduction for depreciation. . . .
>
> You may make claim for additional payment [for building structure reimbursement], if you repair or replace the damaged, destroyed or stolen property within 180 days of the actual cash value payment.
>
> **(b) Building Structure Reimbursement**: . . . [W]e will make additional payment to reimburse you for cost in excess of actual cash value *if you repair, rebuild or replace damaged . . . covered property within 180 days* of the actual cash value payment. . . .
>
> *If you replace the damaged building structure(s)* at an address other than shown on the Policy Declarations through construction of a *new structure or purchase of an existing structure*, such replacement will not increase the amount payable under Building Structure Reimbursement described above . . . .

No. 09-30161

(Emphasis added)

It is undisputed that the Bayles neither repaired their damaged property nor replaced it on the same lot. And, although they did purchase a condominium, it was at a different location. Moreover, for the Bayles to recover under the "building structure reimbursement" clause, the condominium must have been purchased within 180 days of Allstate's last actual cash value payment to the Bayles.[37] None contests that the condominium was not purchased within 180 days of Allstate's last actual cash value payment to the Bayles.[38] "'Louisiana law . . . places the burden on the [insured] to establish every fact essential to recovery and to establish that the claim falls within the policy coverage,'"[39] and the Bayles failed to adduce any evidence that their condominium was purchased within the requisite 180-day period. They have thus failed to demonstrate that there is a genuine issue of material fact concerning whether the "building structure reimbursement clause" applies. The

---

[37] In the district court, the Bayles asserted that Allstate waived the ACV terms of the policy when it paid $3,628.87 in "replacement cost" for wind damage. As this contention was rejected by the district court in its opinion granting summary judgment, however, and the Bayles have not raised it again on appeal, we shall not address it.

[38] Allstate also advances several alternative arguments why the condominium does not qualify as replacement property. As Allstate's primary argument is sufficient, however, we need not address its alternative arguments.

[39] *Williams v. Allstate Indemnity Co.*, 359 Fed. App'x. 471, 473 (5th Cir. 2009) (unpublished) (citing *Ho v. State Farm Mut. Auto Ins. Co.*, 862 So.2d 1278, 1281 (La .App. 3rd Cir. 2003) and *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La.2000) ("When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy." (citations omitted)), *modified on other grounds*, 782 So.2d 573 (La.2001).

district court did not err in concluding that the Bayles are not entitled to any payments for structural damage in excess of the ACV of their house.

## 2.    The Sufficiency of the ACV Reimbursement

The parties also disagree about the correct ACV of the house *and* about whether the payments that the Bayles have already received have fully indemnified them for damage caused by wind.  As noted, the Bayles did not offer their own calculation of ACV; rather, through their expert report, they offered only the total RCV of the house.  Allstate, for its part, proffered evidence of two ACV sums: (1) In an early report submitted to the NFIP, a copy of which was included in Allstate's summary judgment evidence, the ACV of the home was listed as $74,284.80; (2) in its summary judgment briefs, Allstate advanced another ACV sum, which was calculated by its expert, O'Keeda, to be $108,220. The mere existence of these two competing figures, argue the Bayles, signals that there exists a genuine issue of material fact which precludes summary judgment. Allstate counters that, when the Bayles' recoveries for both flood and wind are combined with their recovery from the sale of their property to Murphy Oil, the Bayles recovered $132,628.87 in structural damages to their property, which exceeds both figures that Allstate produced in connection with its motion for summary judgment.

Without ruling on the import, if any, of Allstate's dueling figures, or on its claim that the Bayles' ACV should take into account all or some portion of its recovery from Murphy Oil,[40] we hold that this issue is immaterial in the light of

---

[40]  Louisiana has made it clear that the insureds may "recover under all available coverages provided that there is no double recovery." The payment obtained from Murphy Oil, however, was not an indemnification pursuant to an insurance contract. *Cole v. Celotex*, 599 So.2d 1058, 1080 (La.1992) (quoting 15A Couch on Insurance § 56:34 (2d ed.1983)).  This

No. 09-30161

our overarching determination regarding the shifting evidentiary burdens of the parties. As we explained earlier, Allstate put forward sufficient evidence in support of its motion for summary judgment to establish that all wind-caused structural damage to the Bayles' house was fully compensated. Not only did the Bayles fail to counter with any rebuttal evidence to establish the existence of as-yet uncompensated damage caused by wind, the Bayles *also* failed to proffer any evidence that the *quantum* of damages they had already received from Allstate for wind-caused damage was insufficient. The Bayles have cited no authority, and we have found none, to support the proposition that the shifting evidentiary burden of production in these insurance suits somehow absolves the insureds from the traditional rule "[u]nder Louisiana law, [that] the plaintiff must prove damages with reasonable certainty . . . ."[41] Accordingly, the district court, correctly ruled that the Bayles were not entitled to additional payments for wind damage under their homeowners policy.

## D.    Statutory Penalties under La. R.S. §§ 22:1220 and 22:658

---

double recovery prohibition only extends to "all available coverages—an insurer may not benefit from offsets for payments received by the insured from the United States Small Business Association (SBA) or Road Home Program." *Bradley*, 606 F.3d at 229, n. 10. Although the record does not reflect the details of the Bayles' sale to Murphy Oil, it presumably resulted from an attempt to settle any potential tort claims that residents affected by the oil that leaked from the ruptured storage tanker might bring. We do not read Louisiana law to instruct that any such third-party "windfall" (if environmental contamination may be so characterized) should redound to Allstate's benefit as opposed to the benefit of the insured.

[41] *Mobil Exploration & Producing U.S., Inc., v. Cajun Constr. Servs.*, 45 F.3d 96, 101 (5th Cir. 1995); COUCH ON INSURANCE § 175:9 (3rd ed. 2006) ("It is an insured's burden to produce evidence that would afford a reasonable basis for estimating the amount of damage or the proportionate part of damage caused by the covered peril and that by the excluded peril.").

No. 09-30161

Breach of contract is a condition precedent to recovery for the breach of the duty of good faith,[42] and we agree with the district court that Allstate did not breach its insurance contract with the Bayles. Therefore, the district court properly denied the Bayles' claim for statutory penalties.

## III. CONCLUSION

As the movant for summary judgment, Allstate had the burden of proving the applicability of any *exclusion* from coverage. Allstate properly supported its motion for summary judgment with specific evidence (its adjusters' and expert's reports, and the Bayles' deposition testimony) that addressed the various items of damage incurred by the Bayles' property and the cause of each item's damage, as well as the particular amounts it paid to the Bayles for wind-damage to those items. At that juncture, the burden of production shifted to the Bayles to put forward evidence of specific facts sufficient to demonstrate the existence of uncompensated items of damage that were caused by wind, or of any deficiency in its quantum of the damages paid by Allstate to indemnify the Bayles for wind-caused damage. They failed to do so. As all other issues on appeal are subsidiary to these determinations, the district court's grant of Allstate's motion for summary judgment must be, and hereby is,
AFFIRMED.

---

[42] *Clausen v. Fidelity and Deposit Co. of Maryland*, 660 So.2d 83, 85-86 (La. App. 1st Cir. 1995).